Weight, J.,
dissenting:
I do not concur in the opinion nor the conclusion of the majority of the court concerning the expense of the removal of the Indians. It is not strictly accurate to say that the $1,111,281.70 of the Slade and Bender account is part consideration for the sale of the Outlet, for that item had no existence .until Slade and Bender made an account that was never in the records.
The stipulation relative to the existing dispute about the subject of removals was part of the agreement for such sale, and to that .extent may be treated as entering into the inducement or consideration for such sale, but the rights of the parties created by the contract could not be enlarged nor *360 abridged, without the consent of. both, by the agents of either, while assuming to carry out the provisions of the agreement.
All that was contemplated by the fourth subdivision of article 2 of the agreement of December 19, 1891, was a statement of the account of moneys due the Cherokee Nation under any of the treaties ratified in the years 1817, 1819, 1825, 1828, 1833, 1835, 1836, 1846, 1866, and 1868, and any laws passed by the Congress for the purpose of carrying said treaties, or any of them, into effect. Upon such accounting being made the Cherokee Nation was given the right within twelve months to enter suit in this court, not for any moneys appearing to be due upon the accounting, but for any alleged or declared amount of money promised but withheld by the United States from the Cherokee Nation under any of the treaties or laws which might be claimed to be omitted from or improperly or unjustly or illegally adjusted in said accounting; or, if it should be found upon said accounting that any sum of money had been so withheld, the amount should be duly appropriated by Congress.
What manifestly was intended by the agreement was that the United States was to state, first, the moneys due to the Cherokee Nation under the treaties specified and the laws passed to carry them into effect, and, second, the disposition in fact made of such moneys — not what ought to have been done, but what was- done. In other words, the account should state the various sums so appropriated, so that it would appear in a precise and compact form how much money was due the Cherokee Nation under the treaties and laws mentioned and the disbursements thereof in fact made by the United States.
This was the view taken by the Interior Department before Congress ratified the treaty in the report of the Commissioner of Indian Affairs, communicated to Congress, and upon which was made the appropriation of March, 1893, of $5-,000 to employ such expert persons to properly render a complete account to the Cherokee Nation of moneys due, as required in the fourth subdivision of article 2 of the agreement. The report upon which the Congress acted in making *361 such appropriation in effect stated that it seemed the intention of the parties to the agreement that what was required was a detailed statement of all the moneys received and disbursements made by the. United States of the Cherokee funds under treaties and acts of Congress, and that being true, it would require the services of an expert accountant, with assistants, probably twelve months or more to review and copy the Clierokee accounts and records running back nearly a century', and to prepare a statement of that kind it would require an appropriation of at least $5,000 to pay for the services of an expert accountant and assistants, and in the draft of the bill for the ratification of the agreement for the purchase of the Outlet the appropriation was provided for as recommended, thus proving by the act of ratification itself that Congress intended to required in such accounting only “ a detailed statement of all the moneys received and disbursements made by the United States of the Cherokee funds under said treaties and acts of Congress.” Nothing was intimated or stated that the accountants were authorized to do more than to review and copy the accounts and records running back nearly a century. No authority was given to change the accounts, but to copj'- them.
The defendants agreed to inform the Cherokee Nation how much money was due to them under the various treaties and laws, and how much, for what purpose, and in what maner it had been paid out, thus forming a basis for the nation, to come into this court and bring suit, not merely for a sum or balance appearing to be due on the face of such account, but to dispute the account, allege and declare an amount of money promised and withheld, or., in other words, that the United States had diverted or misappropriated an alleged amount, and upon such allegation this court was given jurisdiction to decide and give its judgment.
Slade and Bender, the accountants, mistook their authority, however, and usurped the jurisdiction conferred upon this court and decided the questions intended for this court. They did not merely state the facts of the account as they existed, but changed the facts and undertook to state the account as they thought it ought to have been made. Their *362 account Avas not the account of the defendants, but the account they believed the defendants should have made instead. They substituted a different account for the one they Avere authorized to state.
It has been argued that the Secretary of the Interior by transmitting the Slade and Bender account to the Cherokee Nation thereby ratified and gave it effect. This can not be, for the plain reason that he was not the agent of the United States for such a purpose. The only authority conferred upon that officer was to employ such expert person or persons to properly render a complete account as required in the fourth subdivision of article 2 of the agreement.
It ought to require no argument to prove that beyond a mere statement of the existence of the account as in fact kept bjr the Government, a true exhibit thereof, the accounting of Slade and Bender is of no effect whatever. By their attempt to enter upon the jurisdiction so manifestly intended for this court they misled the Cherokee Nation,- and thwarted the intention of the parties to obtain an early adjudication of the matters now before the, court. As soon as this report was called to the attention of Congress it was repudiated, and the matter was again referred to this court in the form now existing, and the case is wholly unaffected by the report of Slade and Bender, except in so far as it exhibits the true state of the account, the record of the facts and acts of the GoArernment, as they actually occurred at the respective times of the various transactions.
By setting aside the accounting of Slade and Bender, as respects the charge for removals, Ave would be brought to a consideration of the case upon its merits, namely, the liability of the defendants for removals under the stipulations of the-treaty of 1835. No subsequent act of Congress changed the treaty in this respect. The appropriations made for such purpose Avere, in Anew of the provisions of the treaty, mere gratuities, and did not bind the defendants to assume further liabilities. Congress might do so, if they saw fit, but no legal obligation was assumed in that regard. Plaintiffs are now here claiming under the treaty of 1835, and it is familiar doctrine that they can not at the same time *363 both claim under and repudiate its provisions. That the treaty of 1835, unchanged as it is, charged the expense of the removals to the plaintiffs is too plain for argument, as will appear by reading it within its four corners.
If the conclusion reached by the majority of the court is to be accepted as the final award of the moneys claimed in this suit, it will prove the futility of accomplishing any settlement of disputed matters by the mutual agreement of the parties.
Under the provisions of the act of 1851, in the year 1852 $912,026.13 was paid to and accepted by the Cherokee Nation with the express condition that the same should be in full satisfaction and in final settlement of all claims and demands whatsoever under any treaty theretofore made, with certain exceptions in which the present claim is not included. This settlement was fairly entered into and acquittance executed by the plaintiffs in conformity to the provisions of the act mentioned. No reason appears against the validity and binding force of the compromise, and there is none.
Pursuant to the opinion of the court and in conformity with the conclusions of law, ante, the following decree was entered on the 18th May, 1905:
The above causes, on motion and by consent of the parties, having heretofore been consolidated for purposes both of hearing and judgment by appropriate order of this court, came on to be heard upon the pleadings, orders, and proofs, and were argued by Messrs. Charles Nagel, Edgar Smith, and Frederic D. McKenney, on behalf of the Cherokee Nation; Messrs. Eobert L. Owen and William H. Eobeson, on behalf of the Eastern Cherokees; Mrs. Belva A. Lockwood, on behalf of certain individual claimants, styled Eastern and Emigrant Cherokees, and Mr. Assistant Attorney-General Praclt, on behalf of the United States; and the court being now sufficiently advised in the premises, it is, this 18th da}*- of May, A. D. 1905, adjudged, ordered, and decreed that the *364 plaintiff, the Cherokee Nation, do have and recover of and from the United States as follows:
Item 1. Tlie sum of_ $2,125.00
With interest thereon at the. rate of 5 per cent from February 27, 1819, to elate of payment.
Item 2. The sum of-1, 111, 284. 70
With interest thereon at the rate of 5 per cent from June 12, 1888, to date of payment.
Item 3. The sum of_ 432. 28
With interest thereon at the rate of 5 per cent from January I, 1874, to date of payment.
Item 4. The sum of_ 20,406. 25
With interest thereon from July 1, 1903, to date of payment.
the proceeds of said several items, however, to be paid and distributed as follows:
The sum of $2,125, with interest thereon at the rate of 5 per cent'from February 27, 1819, to date of payment, less 5 per cent thereof contracted by the Cherokee Nation to be paid as counsel fees, shall be paid to the Secretary of the Interior in trust for the Cherokee Nation and shall be credited on the proper books of account to the principal of the “ Cherokee school fund ” now in the-possession of the United States and held by them as trustees.
The sum of $432.28, with interest thereon at the rate of 5 per cent from January 1, 1874, to elate of payment, less 5 per cent thereof contracted by the Cherokee Nation to be paid as counsel fees, shall be paid, to the Cherokee Nation to be received and receipted for by the treasurer or other proper agent of said nation entitled to receive it.
The sum of $20,406.25, with interest thereon at the rate of 5 per cent per annum from July 1, 1893, to date of pajunent, less 5 per cent thereof contracted by the Cherokee Nation to be paid as counsel fees, shall be paid to the Secretary of the Interior and credited on the proper books of account to the principal of the “ Cherokee national fund,” now in the possession of the United States and held by them as trustees.
The sum of $1,111,284.70, with interest thereon from June 12, 1838, to date of payment, less such counsel fees'as may be chargeable against the same under the provisions of the con *365 tract with the Cherokee Nation of January 16, 1903, and such other counsel fees and expenses as may be hereafter allowed by this court under the provisions of the act of March 3, 1903 (32 Stat., 996), shall be paid to the Secretary of the Interior, to be by him received and held for the uses and purposes following:
First. To pay the costs and expenses incident to ascertain-. ing and identifying the persons entitled to participate in the distribution thereof and the costs of making such distribution.
Second. The remainder to be distributed directly to the Eastern and Western Cherokees, who were parties either to the treaty of New Echota, as proclaimed May 23, 1836, or the treaty of Washington of August 6, 1846, as individuals, whether east or west of the Mississippi River, or to the legal representatives of such individuals.
So .much of any of the above-mentioned items or amounts as the Cherokee Nation shall have contracted to pay as counsel fees under and in accordance with the provisions of sections 2103 and 2106, both inclusive, of the Revised Statutes of the United States, and so much of the amount shown in item numbered two (2) as this court hereafter by appropriate order or decree shall allow for counsel fees and expenses under the provisions of the act of March 3, 1903, above referred to, shall be paid by the Secretary of the Treasury to the persons entitled to receive the same upon the making of an appropriation by Congress to pay this judgment.
The allowance of fees and expenses by this court under said act of March 3, 1903, is reserved until the coming in of the mandate .of the Supreme Court of the United States.